## A-US GAL 1, L.P. v National Air Cargo Group, Inc.

2026 NY Slip Op 30912(U)

March 10, 2026

Supreme Court, New York County

Docket Number: Index No. 655890/2023

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 48

-------------------------------------------------------------------------------X

A-US GAL 1, L.P.,

                                    Plaintiff,

                      - v -

NATIONAL AIR CARGO GROUP, INC.,

                                    Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 655890/2023 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 008 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 008) 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 293, 300, 301, 302, 303, 304

were read on this motion to/for          LEAVE TO FILE                    .

In motion sequence 008 defendant National Air Cargo Group, Inc. d/b/a National

Airlines (National) moves pursuant to CPLR 3025(b), for leave to amend its answer to

assert:

> "[1] a counterclaim for equitable reformation of the Assignment, Assumption and Amendment Agreements dated December 22, 2021;
>
> [2] a counterclaim for equitable estoppel based on Plaintiff's execution-stage representations and inducement;
>
> [3] in the alternative, a counterclaim for declaratory relief concerning lack of mutual assent; and
>
> [4] related affirmative defenses, all as set forth in the Proposed Amended Answer and Counterclaims annexed to the moving papers." (NYSCEF Doc. No. [NYSCEF] 293, Order to Show Cause [OSC] at 1-2.)

If successful on its motion to amend, National moves to

> "[a]djourn[] the damages trial currently scheduled for March 13, 2026 . . . and [for an order] directing that any equitable issues raised by the proposed reformation counterclaim and related defenses be tried and determined by the Court prior to any trial on damages, whether jury or non-jury, as applicable. [] To the extent

[* 1]

deemed necessary by the Court, National seeks limited and targeted discovery confined to the matters raised by the proposed amendments, on a schedule to be set by the Court." (NYSCEF 293, OSC at 2.)

With this motion, National insists it is not attempting to relitigate the Appellate Division's decision but, instead, addressing an undecided question: whether the written agreement, as construed by the Appellate Division, accurately reflects the agreement that induced National to agree to the December 22, 2021 assignments by Fortress Transportation and Infrastructure Investors, LLC (Fortress) to plaintiff. (NYSCEF 4, 5, 6, 7, Assignment, Assumption and Amendment Agreements.)

Under CPLR 3025, leave to amend is to be freely given. However,

"leave to amend a complaint should be denied if the proposed complaint could not survive a motion to dismiss. A proposed amended complaint that would be subject to dismissal *as a matter of law* is, by definition, 'palpably insufficient or clearly devoid of merit' and thus should not be permitted under CPLR 3025. Any other conclusion would lead to the waste of public and private resources – namely, amending the complaint only to have it be dismissed after a separate round of briefing, argument, and decision." (*Olam Corp. v Thayer*, 2021 NY Slip Op 30345[U], *3-4 [Sup Ct, NY County 2021].)

The court is compelled to deny this motion, too.[1]  As a matter of law, National fails to state a claim.

---

[1] National has filed three prior motions challenging the First Department's December 31, 2024 decision and this court's decisions flowing from that decision: (i) motion sequence 002, Nationals' Motion to Amend the Answer "to add a claim for breach of the lease §6(f), concerning return of unserviceable engines, and §6(c) which states that "Lessee shall not be liable for damage and any cost of repair resulting from normal wear and tear" (NYSCEF 126, June 15, 2025 Decision and Order [mot. seq. no. 002] at 1), (ii) motion sequence 004, National's Motion to Renew and Reargue (*see* NYSCEF 141, Notice of Motion), and (iii) motion sequence 006, National's Motion to Strike the Note of Issue, which relies on the emails submitted here (*see* NYSCEF 214, Notice of Motion). The court denied motion 006, in part, because National had yet to amend its answer to assert claims, other than breach of contract, which the Appellate Division dismissed. (NYSCEF 263, Tr; NYSCEF 257, December 29, 2025 Decision and Order [mot. seq. no. 006].)  In addition, National filed a new action in Florida against plaintiff's limited

655890/2023   A-US GAL 1, L.P. vs. NATIONAL AIR CARGO GROUP, INC.                   Page 2 of 6
Motion No.  008

2 of 6

The Appellate Division dismissed National's counterclaim for breach of contract, which was premised on National's contention that § 7.3 of the assignment agreement amended the lease's redelivery requirement consistent with National's course of dealing with Fortress.[2]  "To reasonably reconcile the provisions of both the lease and the assignment, without rendering any provision meaningless, we agree with AUSG1 that paragraph 7.3 merely serves as a gap-filler that incorporates the past course of dealing as to terms not explicitly expressed under the lease."  (*A-US GAL1, L.P. v Natl. Air Cargo Grp., Inc.*, 233 AD3d 601, 603 [1st Dept 2024], *lv dismissed* 43 NY3d 958 [2025].)

With this motion, National submits contemporaneous communications with Fortress that corroborate National's argument: National's acceptance of Fortress' assignment of the engine leases to plaintiff was contingent on the assignment "not result[ing] in any greater obligations for National."  (NYSCEF 275, December 2021 Email Correspondance at 10/13 [NYSCEF pagination].)  National asserts that the leases with Fortress involved "aircraft engines manufactured between 1989 and 1999 and operated under 'green time lease' arrangements."  (NYSCEF 281, National's MOL at 2; NYSCEF 280, Christopher Alf[3] aff ¶ 3.)  National insists that because the engines were old, a course of dealing developed with Fortress such that Fortress "accepted each of the engines and returned the applicable deposits to National regardless of the engine's

---

partners and affiliates.  (NYSCEF 267, Florida Complaint.)  The court granted plaintiff's motion to enjoin National from prosecuting the Florida action against plaintiff.  (NYSCEF 298, March 1, 2026 Decision and Order [mot. seq. no. 007].)

[2] Initially, National leased airplane engines from Fortress pursuant to an April 20, 2017 agreement.  (NYSCEF 3, Engine Lease General Terms Agreement.)

[3] Christopher Alf is National's President and Chairman of its board.  (NYSCEF 280, Alf aff 1.)

**655890/2023   A-US GAL 1, L.P. vs. NATIONAL AIR CARGO GROUP, INC.**                    **Page 3 of 6**
**Motion No.  008**

3 of 6

condition or status as 'unserviceable' or not and regardless of the cause of the unserviceability or other condition of the engine[,]" which is consistent with "green time lease arrangements" in the industry. (NYSCEF 18, Amended Answer ¶ 3; *see also* Alf aff ¶¶ 28-29.) The contemporaneous communications between Fortress and National are consistent. "Basic idea is in Sec 7.3 we are saying that the new lessor will do what Fortress did for engine returns. I think this is what you said you wanted." (NYSCEF 273, December 21, 2021 Email From Galler[4] to Alf at 4/5 [NYSCEF pagination]. See also, NYSCEF 275, December 3, 2021 to December 22, 2021 email chain at 2, 10; NYSCEF 273, David Moreno, Fortress chief Operating Officer emails at 2, 3; NYSCEF 274, text messages between Moreno and Alf at 1; NYSCEF 272, emails between Alf and Thomas Garaccio, Fortress President and Chief Commercial Officer at 1.) However, Galler also wrote: "[t]his may lead to some debates later – but I assume you will be able to point to where Fortress specifically allowed you to do things in engine returns that were not necessarily in the contract." (*Id.*) Contrary to plaintiff's interpretation of this email, at no point does Galler suggest that § 7.3 was a gap filler. (NYSCEF 291, Plaintiff's MOL at 9.) Rather, the email supports this court's conclusion that there was an ambiguity; apparently, an intentional ambiguity.[5]

Reformation will be granted "to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties." (*George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 NY2d 211, 219 [1978]

---

[4] Eric. S. Galler is National's attorney in the assignment negotiation.
[5] This court found the contract ambiguous. (NYSCEF 45, June 28, 2024 Tr at 18-19.) The Appellate Division reversed. (*A-US GAL1, L.P. v Natl. Air Cargo Grp., Inc.*, 233 AD3d 601, 603 [1st Dept 2024], *lv dismissed* 43 NY3d 958 [2025].)

[* 4]

[citations omitted].)  To state a cause of action for reformation based on unilateral mistake, the movant must allege fraud by the other party.  (*Barclay Arms, Inc. v Barclay Arms Assocs.*, 74 NY2d 644, 646 [1989] ["[a] bare claim of unilateral mistake by plaintiff, unsupported by legally sufficient allegations of fraud on the part of defendants, does not state a cause of action for reformation" (citations omitted)].)  Here, it is undisputed that National proposed the § 7.3 language and plaintiff adopted it.  National's motion to amend the answer based on unilateral mistake to add equitable reformation of the agreements is denied because it is also undisputed that National's communications were with Fortress not with plaintiff.  (See NYSCEF 272, 273, 274 and 275.)  Accordingly, National has failed to allege that plaintiff perpetrated fraud.

Likewise, National has not alleged that plaintiff had the same understanding as National, namely that the § 7.3 course of dealing provision in the assignment would modify the lease's redelivery provisions.  Therefore, National's claim for reformation based on mutual mistake must also be denied.

Finally, National's equitable estoppel claim fails as a matter of law because National does not allege a false representation by plaintiff.  (*See Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgmt., L.P.*, 7 NY3d 96, 106–07 [2006] ["in the absence of evidence that a party was misled by another's conduct or that the party significantly and justifiably relied on that conduct to its disadvantage, an essential element of estoppel [i]s lacking." (internal quotation marks and citations omitted)].)

Accordingly, it is

655890/2023   A-US GAL 1, L.P. vs. NATIONAL AIR CARGO GROUP, INC.
Motion No.  008

Page 5 of 6

ORDERED that motion 008 is denied.  The trial shall proceed as planned on

Friday, March 13, 2026.

__3/10/2026__
**DATE**

_____
**ANDREA MASLEY, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**655890/2023   A-US GAL 1, L.P. vs. NATIONAL AIR CARGO GROUP, INC.**
**Motion No.  008**

**Page 6 of 6**

6 of 6

[* 6]